HART *v.* WARNERS.

AUTOMOBILES—BICYCLES—NEGLIGENCE—EVIDENCE.

 Finding of trial court in nonjury actions, arising from injuries received by 8-year-old bicyclist who collided with extreme left front and left side of defendant's car as they were proceeding in opposite directions on narrow blacktop road, that defendant was not guilty of negligence *held,* not contrary to the clear preponderance of the evidence, the testimony as to whether defendant's car was on its proper side of the road or about the middle of it being in conflict.

SMITH, EDWARDS, and SOURIS, JJ., dissenting.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 13, 1961. (Docket Nos. 77, 78, Calendar Nos. 48,586, 48,587.) Decided September 21, 1961.

Case by David Hart, by next friend Donald Hart, against Fred Irwin Warners for personal injuries sustained when bicycle and automobile collided. Similar action by Donald Hart for medical expense. Cases consolidated for trial and on appeal. Judgments for defendant. Plaintiffs appeal. Affirmed.

*Roach, Smolenski & Twohey,* for plaintiffs.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES

5A Am Jur, Automobiles and Highway Traffic § 430.
Reciprocal duties of driver of automobile and bicyclist or motor-cyclist.  172 ALR 736.

PER CURIAM. These consolidated suits for negligence, one derivative from the other, were tried to the court without a jury. The trial judge found for defendant and entered judgments accordingly. Plaintiffs appeal.

A bicycle ridden by an 8-year-old boy (plaintiff in the principal suit), proceeding in one direction along a rather narrow blacktop road, came into collision with an automobile defendant was driving in the opposite direction. Whether at the time of collision the bicycle or the automobile was on the wrong or slightly wrong side of the road was disputed. The center line was not marked. The point of impact of car and bicycle was shown photographically as being on the extreme left front and left side of the car. There was testimony from which the trial judge could infer that the defendant was driving on his own side of the road at the time of and immediately prior to occurrence of the collision, and there was other proof from which the trial judge could infer that defendant was, at the time, driving on "about the middle of it."

There also was testimony that the boy, just before the collision took place, "swerved to his left, right into the car." The trial judge relied particularly on this testimony. Plaintiffs criticize his action in such regard as violative of the sudden emergency doctrine and say that fear of being hurt by the oncoming car was the cause of the swerve if in fact the boy did swerve as testified.

Questions of fact only were presented before the circuit judge. He resolved them. His finding thereon cannot be pronounced contrary to the clear preponderance of the evidence. The judgments entered below must therefore be affirmed, with costs to defendant.

DETHMERS, C. J., and CARR, KELLY, BLACK, and KAVANAGH, JJ., concurred.

SMITH, J. (*dissenting*). This is another drunk driver case. The defendant is the driver. The plaintiff is a boy (then 8 years of age) who was unfortunate enough to be riding his bicycle near the drunk. He was seriously injured by collision with the car. The trial court, without a jury, found no cause for action.

The accident occurred on Carlton street, a narrow blacktop road in a residential area near Grand Rapids, Michigan. It happened on August 17, 1957, at about 7 in the evening. Three boys, of whom plaintiff was one, were at this time riding their bicycles south on Carlton and on their own side of the road. Defendant, who in the words of the trial court, "was under the influence of intoxicating liquor," turned onto Carlton from the south and proceeded north, in a direction opposite to that of the boys' travel. According to the testimony of the leading boy, Michael Blaszczyk, and, also, the testimony of a neighbor, the defendant "cut" the corner and bore down on the boys on the wrong side of the road. Mike, the leader, then 7 years of age, "went into the weeds" alongside the road and avoided injury. If he had not, he says, he would have been run down. In his words, the car came around the corner "fast" and if he had kept going in a straight line "I would have got hit."

David Hart, the plaintiff,* was neither so self-possessed nor so fortunate. He noticed the defendant's car "coming around [the corner] and it looked like he was going pretty fast and I didn't know what to do." What, then, did he do? We will let him

---

* For purposes of simplicity we will refer to David Hart as the plaintiff throughout. Actually we have 2 cases, that of David Hart, by his next friend, and that of Donald Hart, his father.

answer: "I lost control of my bike. I didn't know where I was going or nothing." The bicycle and the car collided near the center of the road, about halfway up the block (which was some 300 feet long). The court found that the defendant's automobile was on its own right side of the road when the collision occurred and that the accident was caused by plaintiff's swerving into the car. So analyzed, it was all the boy's fault. The theory seems to be that defendant was on his own proper side of the road at the time of the accident, minding his own business, driving at a safe speed, when all of a sudden this boy crossed the center line and ran into him. The court held that no cause for action had been shown. "There is no testimony," he held, "as to any careless or heedless driving."

But this situation cannot be viewed solely as it existed at the moment of impact. Why, as a matter of fact, was one of the boys in the weeds? Is it because defendant, as has been pictured, was on his own proper side of the road, driving quietly along at a reasonable speed? Did Mike Blaszczyk take to the weeds because he was frightened at this spectacle? Or did he abandon the road because he was terrified at something and reacted instinctively to save himself from harm? . If so, what was this something? Who was responsible for it?

There is gross error in this case. The court, in making this error, held that as to Mike Blaszczyk's testimony, "Well, Mike Blaszczyk's testimony after all you can disregard. He does not refer to anything that constitutes negligence on the part of the defendant; not a thing." On the contrary, what Mike testified to is the crux of the case as to defendant's negligence. When any automobile driver, drunk or sober, rounds a corner in a residential area on the wrong side of the road he may reasonably expect

to place his vehicle squarely in the path of those rightfully in the road, one of whom in this case was the plaintiff, David Hart. Confronted by the imminent peril of the defendant's creation David was faced with a cruel choice, the correct one to be made at the risk of injury or death. He could keep to his own side of the road, hoping that the oncoming driver would cross over in time to the other side, where he should have been all along. Or, he could abandon the road and run his bicycle off into the weeds, as did Mike Blaszczyk. Or, he himself could swerve to the other side of the road, leaving his own proper side to the driver who had usurped it. David apparently did the latter, though not as the result of conscious choice. "I didn't know which way to turn my bike," he testified. "I was scared. * * * Because the car was coming right at me." But outfoxing a drunk is no simple matter, even for a reasoning adult under no strain. David's instinct betrayed him. The driver, as well, turned to the east side of Carlton and there they collided.

There are 2 issues of negligence involved. As to contributory negligence on the part of the plaintiff, his actions are to be judged not only with respect to his age, but also in the light of the emergency of the defendant's creation faced by him. The instruction approved by us in *Donker* v. *Powers*, 230 Mich 237, 242, is equally applicable here:

"Where one is required to act suddenly and in the face of imminent danger, the law does not require him to exercise that same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties. And this is especially true where the peril has been caused by the fault of another. A person thus situated in an emergency will not be held guilty of either negligence or contributory negligence merely because he failed to exercise the care a prudent person would

have exercised under these circumstances, or because he failed to exercise the best judgment or take every precaution which he might have taken, which, from a careful review of the circumstances, after the accident, it appears he might have taken and might have avoided the injury, and this applies to both a defendant in an emergency and the person injured in an emergency. If such person in good faith acts as a person of ordinary prudence might have acted under the circumstances, he will not be guilty of either negligence or contributory negligence even though the act done is actually dangerous and results in injury in attempting to escape the dangers. But, such acts must be done suddenly and under impending danger."

The issue as to defendant's negligence turns upon whether or not he did, in truth, come around the corner in such a way as to place his car on the wrong side of the street. Not only, we observe, did Mike so testify, but a neighbor, William Schansema. This witness observed, as well, that defendant had "cut the corner" and was on the wrong side of the road "for about 40 feet." The trial judge felt that his testimony was irrelevant and immaterial "because he was so far back of the boy, he only saw what happened from the corner to wherever the thing happened", and did not observe the actual impact. What happened at the corner, however, is of the essence of defendant's negligence, not what happened later. Much testimony was taken as to precisely where the impact occurred, whether on the center line, or over a little on one side or the other, and much of it was immaterial. Defendant had created a situation in which, if others were where they had a right to be and might reasonably be expected to be, injury was almost inevitable. It is true, of course, that by the use of quick wit, and by instantaneous, and plain lucky dodging, an innocent

party so confronted may escape injury, as did Mike Blaszczyk. But not all will be so blessed, and while many things lie in the mouth of a drunk, as we all know, one of them is not the privilege to employ as a legal defense a lack of agility or calm judgment on the part of those imperiled by his wanton acts.

The judgments should be reversed and the case remanded for new trial. Costs to appellants.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.